# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN CROWLEY<br>6402 Forest Mill Lane<br>Laurel, MD 20707,<br>    Plaintiff,<br><br>    v.<br><br>TOM VILSACK, SECRETARY<br>U.S. Department of Agriculture<br>1400 Independence Avenue, S.W.<br>Washington, DC 20250<br><br><br>    Defendant, | Civil Action No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Kevin Crowley, by way of his counsel, Morris E. Fischer, herein brings action for actions taken against him by the Defendant, Secretary of U.S. Department of Agriculture ("Defendant" or "Agency"), in violation of the Rehabilitation Act, 42 U.S.C. § 12101, et seq.

## PARTIES

1. Plaintiff, Kevin Crowley, is a former employee of the U.S. Department of Agriculture.

2. Defendant is the Secretary of the Department of Agriculture, named in his official capacity pursuant to 42 U.S.C. § 2000e-16.

3. Defendant does business and is located in Washington, D.C.

4. Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

## JURISDICTION

5. This action arises under the Rehabilitation Act, 42 U.S.C. § 12101, *et seq*., which prohibits discrimination against employees based on disability.

6. Defendant does business at the United States Department of Agriculture, 1400 Independence Ave., S.W., Washington, DC 20250.

7. All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of discrimination and retaliation with his federal employer, the Department of Agriculture and brings his action after 180 days since Plaintiff filed his formal administrative complaint, on or about June 23, 2015.

8. The District of Columbia is where the actions complained of in the present case took place, where the employment records relevant to the unlawful practices are kept by the Defendant.

9. Therefore, this court has jurisdiction over these claims under 42 U.S.C. §§ 2000e–5 & –16 (2012).

10. Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

11. Therefore, this court has proper venue pursuant to 29 U.S.C. § 1391 (2012).

## FACTS

12. Mr. Crowley has a medical condition that affects his back and legs and causes pain and difficulty moving.

13. In the summer of 2008 Mr. Crowley was diagnosed with spinal stenosis and arterial insufficiency.

-3-

14. **Spinal Stenosis** is a condition due to narrowing in and around the spinal canal causing nerve pinching which leads to persistent back pain, pain in the buttocks, limping and lack of feeling in the lower extremities.

15. **Arterial insufficiency** is a condition consisting of decreased blood flow or lack of blood flow through the arteries.

16. Mr. Crowley continues to have these conditions.

17. Starting in May, 2013, Mr. Crowley teleworked two days per week.

18. Starting in May, 2013, Mr. Crowley teleworked two days per week and did not need to ask for reasonable accommodation.

19. Starting in May, 2013, when Mr. Crowley teleworked two days per week, he was able to complete the essential functions of his position.

20. The aforementioned telework arrangement continued from approximately May, 2013, to January 20, 2015.

21. Sometime in January, 2015, Mr. Crowley learned from his supervisor, Charles Thompson informed Mr. Crowley that the Chief Information Officer ("CIO"), Janet Stevens and Deputy Chief Information Officer ("DCIO"), Jennifer Sisto, did not like Mr. Crowley's two day a week, telework arrangement.

22. Mr. Crowley asked Mr. Thompson for clarification as to that which was lacking in his job performance, as per his teleworking.

23. Mr. Thompson communicated Mr. Crowley's aforesaid concerns to the CIO and DCIO.

24. Mr. Thompson later informed Mr. Crowley that neither the CIO nor DCIO could provide anything specific.

25. On or about January 30, 2015, Mr. Crowley presented Charles Thompson with a signed two day a week telework agreement.

26. On or about January 30, 2015, Mr. Thompson informed Mr. Crowley that the DCIO directed him to reduce the amount of Mr. Crowley's telework.

27. On or about February 13, 2015, Mr. Crowley submitted his formal request for reasonable accommodation due to disability to the defendant's human resources office.

28. In early March, 2015, Mr. Thompson again informed Mr. Crowley of the CIO's and DCIO's displeasure with the two day a week telework arrangement.

29. On or about March 24, 2015, Mr. Crowley met with Mr. Thomson to conduct a mid-term evaluation.

30. At aforesaid meeting, Mr. Thompson informed Mr. Crowley that his performance was satisfactory.

31. At aforesaid meeting, Mr. Thompson informed Mr. Crowley that there were no performance issues.

32. At aforesaid meeting, Mr. Crowley initialed the form 435-A.

33. At aforesaid meeting, Mr. Thompson informed Mr. Crowley that he was departing for another position within approximately 2-3 weeks.

34. Mr. Thompson then informed Mr. Crowley that he was asked by the CIO and DCIO to generate a Performance Improvement Plan ("PIP") for Mr. Crowley.

35. Mr. Thompson then informed Mr. Crowley that he did not feel comfortable generating said PIP.

36. During said conversation, Mr. Thompson informed Mr. Crowley that he did not feel justified generating said PIP.

37. During said conversation, Mr. Thompson informed Mr. Crowley that the CIO and DCIO were probably asking for the PIP because of the telework schedule.

38. On April 2, 2015, the CIO sent an email to Mr. Crowley indicating she would be initiating and internal review of one of the his teams, the telecom team, because some bills were not being paid on time.

39. Mr. Crowley immediately informed the CIO that the workload for that team had more than doubled in the past year and that two members of the team retired over the past 18 months, a third team member was re-assigned during this time and none of the vacant positions had been filled.

40. Mr. Crowley promptly looked into the aforementioned matter.

41. Mr. Crowley had meetings with the team's billing contractor to determine the issues in the billing process that may cause delay.

42. Mr. Crowley learned at those meetings, there were a number of issues causing delay, but only a few pertained to his team.

43. On April 3, 2015, Mr. Thompson sent an email to Mr. Crowley that the Chief Information Officer ("CIO") requested that Mr. Crowley's telework be suspended from April 6, 2015 – April 17, 2015.

44. Between April 6, 2015 and April 17, 2015, Mr. Crowley was forced to abandon his telework agreement and report daily to work.

45. On or about April 8, 2015, Mr. Thompson again informed Mr. Crowley that the CIO and DCIO asked Mr. Thompson to initiate the aforementioned PIP.

46. On or about April 8, 2015, Mr. Thompson again expressed his reluctance to Mr. Crowley to commence the PIP.

47. During said conversation, Mr. Thompson informed Mr. Crowley that he, Thompson, would try to get Crowley's new supervisor start the PIP.

48. On or about April 13, 2015, Mr. Elamin Osman became Mr. Crowley's new acting supervisor.

49. On or about April 15, 2015, Mr. Crowley confirmed with Mr. Osman that he was aware of Mr. Crowley's medical accommodation.

50. On or about April 16, 2015, Mr. Crowley met with Mr. Osman, who gave Mr. Crowley a Performance Improvement Plan that was signed by Charles Thompson.

51. The aforesaid document made several statements that were not true.

52. The aforesaid document was also dated April 10 but Mr. Crowley did not see it until the 16th of April.

53. On April 17, 2015, Agency management assigned Mr. Crowley to visit a vendor in Culpeper, Virginia.

54. The aforementioned visit to Culpeper, Virginia was totally unnecessary.

55. The aforementioned visit to Culpeper, was several hours away from Mr. Crowley's residence.

56. On April 23, 2015, Mr. Thompson called Mr. Crowley.

57. On said date, during said conversation, Mr. Thompson apologized for the PIP, saying that Jennifer and Janet had forced him to create the document before he would be allowed to leave the agency.

58. During the same call, Mr. Thompson informed Mr. Crowley that he objected to the request.

59. During the same call, Mr. Thompson informed Mr. Crowley that he told the CIO and DCIO that the Labor and Employment Relations Division had advised against sending it.

60. On or about April 24, 2015, Mr. Osman, Jennifer Sisto and Mr. Crowley met to discuss the PIP.

61. At said meeting, Mr. Crowley expressed his concern was that there were no discussions of performance or any other communication related to performance before he received the PIP.

62. At said meeting, Mr. Crowley expressed concern regarding the description in the document of performance issues and that it was vague and generic and did not provide specific detail.

63. At said meeting, Ms. Sisto noted an issue from December 2014 regarding Blackberries still connected when people left the OCIO.

64. At said meeting admitted the OCIO outboarding process is broken.

65. At said meeting, Ms. Sisto stated that the telecom team had bad accountability.

66. At said meeting, Ms. Sisto noted a January 2015 issue related to circuits that went to a previous FSIS installation vacated in 2009, still being billed.

67. At said meeting, Mr. Crowley expressed that his team took action as soon as it became aware, ultimately there were several factors that prevented the team from becoming aware of same earlier.

68. At said meeting, Ms. Sisco also blamed other billing issues on Mr. Crowley's team that existed long before Mr. Crowley was team leader.

69. At said meeting, Mr. Crowley indicated to Ms. Sisco that he was merely carrying out the processes established by the Agency long before his arrival and had no authority to change them nor was he given any instruction to change them.

70. At said meeting, Ms. Sisco blamed Mr. Crowley for a number of team problems that were well beyond Mr. Crowley's control.

71. At said meeting, Mr. Osman assured Mr. Crowley that the two would have regular meetings to review PIP performance.

72. At said meeting, Mr. Osman assured Mr. Crowley that the two would have weekly meetings to review PIP performance.

73. The first weekly meeting was missed by Mr. Osman.

74. Mr. Crowley advised Mr. Osman of same.

75. Mr. Osman on or about May 7, 2015, that he would be setting up weekly meetings starting May 8, 2015.

76. On or about May 8, 2015, Mr. Osman and Mr. Crowley held their first meeting.

77. At said meeting, Mr. Crowley asked Mr. Osman what focus he should have regarding work assignments.

78. At said meeting, Mr. Osman informed Mr. Crowley that the focus should be telecom, not network.

79. At said meeting, Mr. Osman further stated that he thought that making sure telecom tickets are updated regularly and that incoming tickets are assigned to individuals quickly would be two things that are important to the CIO.

80. At said meeting, Mr. Osman stated that he needed a process to monitor tickets and a way to generate a status report related to these two types of tickets.

-9-

81. Prior to this meeting, Mr. Crowley was never instructed as to the aforementioned.

82. Mr. Crowley later informed Mr. Osman that several of the telecom team members offered to work comp hours to keep up with the increased workload.

83. As such, Mr. Osman agreed that several telecom team members could work comp hours to keep up with the increased workload.

84. On or about May 15, 2015, Mr. Crowley filed his informal EEO Complaint with an EEO Counselor.

85. In anticipation of the next PIP meeting, Mr. Crowley was assigned additional duties for the first time, including but not limited to a five year projection, strategy component.

86. The five year projection strategy component was actually a job duty of Mr. Osman, not Mr. Crowley.

87. On June 5, 2015, Mr. Crowley went to Mr. Osman's office for another PIP meeting, but Mr. Osman did not show up.

88. On June 12, 2015, Mr. Osman cancelled another PIP meeting.

89. On June 19, 2015, Mr. Osman informed Mr. Crowley that there were 60 days to resolve the PIP.

90. On said date, Mr. Osman informed Mr. Crowley that he has made "big improvements" regarding his performance.

91. On or about June 23, 2015, Mr. Crowley filed his formal EEO Complaint.

92. There were no weekly meetings scheduled for the last week of June and the first week of July, 2015.

93. As of July 5, 2015, 80 days had passed on a 60 day PIP, with no resolution.

94. The Defendant failed to close the completed PIP timely.

-9-

federal complaint | 15 March 2016  10:48

95. On July 15, 2015, Defendant, through Mr. Osman, informed Plaintiff of the Agency's intention to keep the PIP going until August 15, 2015, 122 days.

96. Also, on said date, Defendant, through Mr. Osman, added tasks and responsibilities to the PIP.

97. On July 24, 2015, there was an additional PIP meeting that Mr. Osman failed to attend.

98. On August 14, 2015, there was an additional PIP meeting that Mr. Osman failed to attend.

99. As of August 31, 2015, there were seven (7) weeks in a row in which there was no PIP meeting between Mr. Osman and Mr. Crowley.

100. There were then no PIP meetings during the first two weeks of September.

101. On or about September 17, 2015, Mr. Crowley sent an email to Mr. Osman, expressing that his attorney would be willing to meet with Agency Counsel to discuss the lack of progress from management's end regarding the PIP.

102. On October 1, 2015, Mr. Osman responded to Mr. Crowley's September 17, 2015, email.

103. On said date, Mr. Osman contended for the first time that Mr. Crowley was not reachable for approximately a month and a half.

104. Mr. Crowley was most definitely reachable during that time period.

105. On said date, Mr. Osman stated that Mr. Crowley had made, "some satisfactory improvements."

106. On said date, Mr. Osman added deficiencies to Mr. Crowley's performance in accordance with the PIP, for the first time.

107. On said date, Mr. Osman added deficiencies that were beyond the control of Mr. Crowley.

108. Several of the points listed by Mr. Osman were issues that didn't start until late July or early August, well after the PIP should have ended.

109. On October 13, 2015, the Agency finally ended the PIP.

110. On October 13, 2015, the Agency finally conceded that Mr. Crowley's work was satisfactory.

111. On or about November 11, 2015, management signed Mr. Crowley's 2015 performance appraisal.

112. Said performance appraisal rated Mr. Crowley lower because of his PIP and stated negative comments because of the PIP.

113. The Agency to this date has not completed the Report of Investigation.

## COUNT I
## RETALIATION FOR REQUESTING ACCOMMODATION
## AND PARTICIPATION IN EEO PROTECTION

114. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

115. Plaintiff engaged in protected EEO activity by: (a) Requesting Accommodation for the two day a week telework; (b) filing the informal EEO Complaint; (c) filing the formal EEO Complaint; and (d) expressing to Mr. Osman that Mr. Crowley's Attorney would meet with Agency Counsel to discuss PIP issues.

116. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity.

117. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity by: (a) placing Mr. Crowley on a PIP; (b) extending the PIP long after it was completed; (c) adding tasks and responsibilities to Mr. Crowley's job; (d) failing to attend weekly PIP meetings; and (e) downgrading Mr. Crowley's 2015 performance evaluation and placing negative comments in it.

118. The Agency, through its employees, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

119. The Agency violated Mr. Crowley's rights under the Rehabilitation Act. In accordance with *Hayes v. Sebelius*, 762 F.Supp.2d 90, 108 (D.D.C) 2011 and *Kelly v. Mills*, 677 F. Supp.2d 206, 225 (D.D.C 2010), placement into a PIP is an adverse action with respect to retaliation.

120. The Agency unlawfully retaliated against Mr. Crowley and his rights under the Rehabilitation act.

121. Because of this unlawful conduct, Mr. Crowley suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

a. A declaratory judgment that the conduct of the Agency challenged herein was illegal and in violation of the aforementioned laws;

b. Compensatory damages in an amount to be proved at trial, including compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described herein;

    c.    Reasonable attorneys' fees, expenses, and costs incurred by Plaintiff;

    d.    Removal of the negative comments in the 2015 performance appraisal;

    e.    Upgrading of the 2015 performance appraisal;

    f.    Removal of the PIP from Mr. Crowley's personnel file;

    g.    A declaratory judgment ordering the Agency to complete the Report of Investigation; and

    h.    Such other and further relief as the Court may deem just.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
Law Office of Morris E. Fischer, LLC
DC Bar No. 490369
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

Date: _____